JUDGE DAVID BRIONES

THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 SEP -2 PM 12: 11
CLERK. US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| MABEL ARREDONDO,<br><br>Plaintiff,<br><br>v.<br><br>INSURANCE SUPERMARKET INC., a Delaware Corporation, and EMC NATIONAL LIFE COMPANY, an Iowa Corporation<br><br><br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ EP22CV0310 |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. The Plaintiff is MABEL ARREDONDO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant INSURANCE SUPERMARKET INC. ("ISI") is a corporation organized and existing under the laws of Delaware with its principal address at 1951 Northwest 7th Avenue, 600, Miami, Florida 33136. Defendant ISI is a registered foreign corporation in Texas and can be served via registered agent Corporation Service Company D/B/A CSC-lawyers Inc at 211 East 7th Street, Suite 620, Austin, Texas 78701.

3. Defendant EMC NATIONAL LIFE COMPANY ("EMC") is a corporation organized and existing under the laws of Iowa with its principal address at 699 Walnut Street, Suite 1100, Des Moines, Iowa 50309 and can be served via its registered agent Michelle M Struck at 699

1

Walnut Street, Suite 1100, Des Moines, Iowa 50309.

4. Defendants ISI and EMC are hereinafter collectively referred together as "Defendants".

## JURISDICTION AND VENUE

5. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

6. **Personal Jurisdiction.** This Court has general personal jurisdiction over the Defendants because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

7. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the Defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013 when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the

4

TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

22. Plaintiff's personal cell phone (915) 999-8219 has been registered on the National Do-Not-Call Registry since March 31, 2022.

23. Plaintiff's personal cell phone (915) 243-1821 has been registered on the National Do-Not-Call Registry since May 18, 2022.

24. Plaintiff never asked the National Do-Not-Call Registry administrator to remove her from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25. Defendant ISI works as a "insurance broker" for Defendant EMC.

26. Defendant ISI hires and authorizes telemarketers to make illegal robocalls to thousands of consumers *en masse* using an ATDS with prerecorded voice messages to solicit Defendant EMC's life insurance policies.

27. Defendant ISI approves of the contracts with these telemarketers.

28. Defendant ISI pays the telemarketers out of bank accounts they own and control.

29. Defendant ISI approves of the robocall scripts their telemarketers use when making unauthorized phone calls to consumers soliciting Defendant EMC's life insurance policies that

state,

> "My name is Becky from Senior Benefits how are you today? Great I am with American benefits so based on our records I am sure that you qualify for state regulated final expense life insurance plan that is going to cover all of your funeral and burial expenses. So I have an insurance consultant on the line who will connect you to a state licensed agent. Is that okay? Now to generate the best price for your age how old are you? So that all the information I need now so I'm going to connect you with my insurance consultant who will guide you further hold on just a moment for me okay?"

30. Defendant EMC is well aware that Defendant ISI hires third-party telemarketers to make illegal robocalls to thousands of consumers soliciting their life insurance policies.

31. Each and every time Defendant ISI sells a life insurance policy to a consumer from Defendant EMC it benefits both Defendants financially.

32. Plaintiff received at least four (4) robocalls with a prerecorded voice message soliciting life insurance policies that were generated using an automatic telephone dialing system ("ATDS") to her personal cell phones ending in 8219 and 1821 from third-party telemarketers calling on behalf of Defendants within a two-month period ("the calls").

33. With information and belief Plaintiff has received more phone calls from or on behalf of Defendants within the past two years that are unknown to Plaintiff at this time and will be revealed during discovery.

34. Defendant ISI has previously been sued for violating the TCPA on actions *Kemp v. Insurance Supermarket Inc.* 1:22-cv-21529-FAM (S.D.FL., May 17, 2022) and *Cacho v. Insurance Supermarket Inc. and EMC National Life Company 6:22-CV-01337* (M.D.FL, July 28, 2022). and continues to violate the law because doing so benefits both Defendants financially.

35. Defendant EMC is aware of Defendant ISI's illegal behavior, however, continues to allow them to sell life insurance policies on behalf of Defendant EMC because it benefits them financially.

36. On June 29, 2022, at 10:28 AM Plaintiff received one of four phone calls to her personal cell phone XXX-XXX-8219. The call started with the pre-recorded message, "Hi, this is Becky with Senior benefits." Plaintiff followed the prompts however, the call dropped.

37. On June 30, 2022, Plaintiff again received another call to Plaintiff's personal cell phone XXX-XXX-8219 with the same prerecorded voice message, "Hi, this is Becky with Senior Benefits". Plaintiff followed the prompts but again the call dropped.

38. On August 2, 2022, Plaintiff received another call to Plaintiff's personal cell phone XXX-XXX-1821 with the same pre-recorded message, "Hi, this is Becky with Senior Benefits"

39. Plaintiff was extremely aggravated and frustrated for receiving the same phone calls and followed the prompts for the sole purpose of identifying the companies responsible for illegal robocalls.

40. Plaintiff was then transferred to a telemarketer named Kevin that stated he was a "funeral insurance coverage."

41. Kevin advised Plaintiff that the phone call was in regard to a final expense insurance program that covers funeral, burial, cremation, or any other final expenses.

42. Kevin then asked Plaintiff qualifying questions and solicited Plaintiff for a life insurance policy on behalf of Defendants.

43. Plaintiff did not want or need a life insurance policy however advised Kevin she did for the sole purpose of identifying the company responsible for the illegal robocalls.

44. Kevin then asked for Plaintiff's name confirming the phone call was made using an ATDS and was not made directly to Plaintiff as the phone call could've reached anyone in the United States.

45. Kevin then advised Plaintiff he was going to transfer her to one of his licensed agents who will

provide the benefits of the life insurance coverage.

46. Kevin then transferred Plaintiff to a representative named Elizabeth that stated she was with Defendant ISI.

47. Elizabeth then confirmed Plaintiff's information, asked her qualifying questions, and solicited her for a life insurance policy on behalf of Defendants.

48. Elizabeth then advised Plaintiff she was going to transfer her to an "advisor" in her state that will discuss how much coverage she qualifies for. After answering numerous questions regarding Plaintiff's health. Elizabeth attempted to transfer Plaintiff, however the call dropped.

49. Elizabeth immediately called Plaintiff back and then transferred Plaintiff to a representative named Nasir Stewart who said he was a senior advisor from Defendant ISI.

50. Nasir advised Plaintiff that they are a "broker" company for a number of top US life insurance companies and their part in the program is to help consumers find the best rates.

51. Nasir then asked Plaintiff a series of healthcare questions and solicited and sold Plaintiff for a life insurance policy on behalf of Defendant EMC.

52. Nasir advised Plaintiff the cost of the life insurance policy will be $93.15 per month.

53. A few days later, Plaintiff received the life insurance policy via regular mail to her residence which revealed the companies responsible for the illegal robocalls. *See "Exhibit A."*

54. Plaintiff did not ask Defendants to call her regarding life insurance.

55. Plaintiff did not seek Defendant's phone calls or services at any time before, during, or after the phone calls alleged in this Complaint.

56. Table below displays the calls made to Plaintiff from or on behalf of Defendants.

TABLE A

57.

8

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 06/29/2022 | 10:28 AM | 325-229-4303 | Robo Call **to phone 8219** from Becky at Senior Benefits call dropped |
| 2 | 06/30/2022 | 9:40 AM | 325-237-8159 | Robo Call **to phone 8219** from Becky at Senior Benefits call dropped |
| 3 | 8/2/2022 | 3:48 PM | 915-279-6360 | Robo call **to phone 1821** from Becky at Senior Benefits. Completed qualifying questions transferred to telemarketer Kevin and Elizabeth from Insurance Supermarket then call dropped |
| 4 | 8/2/2022 | 4:01 PM | 915-201-3195 | Call back from Elizabeth **to phone 1821**. Transferred call to Nasir Stewart with Insurance Supermarket. Purchased life insurance policy. |

58. Defendants initiated numerous unsolicited telephone calls, made unlawful telemarketing sales pitches regarding "final expense" life insurance policies, and unlawfully collected Plaintiff's personal information, such as social security number, email address, and home address.

59. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the harassing telemarketer calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful telemarketer calls.

60. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of.

61. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

62. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

63. No emergency necessitated the calls.

64. None of the defendants ever sent Plaintiff any do-not-call policy. Plaintiff sent an internal do-not-call policy request to Defendant ISI to email info@insurance-supermarket.com on August 25, 2022 which is an email listed on the website they own and control https://insurance-supermarket.com.

65. Plaintiff sent an internal do-not-call policy request to Defendant EMC to email help@emcnl.com on September 1, 2022 which is an email listed on their website they own and control https://emcnationallife.com.

66. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Plaintiff the unsolicited calls.

67. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

68. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

69. No emergency necessitated the calls.

70. Plaintiff has never been a customer of Defendants to constitute any business relationship.

### VICARIOUS LIABILITY ON DEFENDANTS ISI AND EMC

71. Defendants are vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

72. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of

agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

73. Defendants gave express authority and apparent authority to telemarketers with full knowledge the administration of sales and solicitation of sales of "final expense" life insurance policies marketed as a result of the contract would be marketed using an automatic telephone dialing system ("ATDS").

74. By hiring a company to make calls on its behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

75. Moreover, Defendants maintained interim control over the actions of its telemarketers.

76. For example, Defendants had absolute control over whether, and under what circumstances, it would accept a customer from its telemarketers.

77. Furthermore, Defendants had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS or prerecorded voice messages to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

78. Defendants also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

79. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c. "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

80. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

81. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

82. Defendants are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for a "final expense" life insurance policy on behalf of Defendants.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

83. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent— a "nuisance and invasion of privacy."

84. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

85. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

86. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

87. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

### Plaintiff's cell phones are residential numbers

88. The calls were to Plaintiff's cellular phones (XXX) XXX-8219 and (XXX) XXX-1821 which are Plaintiff's personal cell phones that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 5 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phones registered in her personal name, pays the cell phones from her personal accounts, and the phones are not primarily used for any business purpose.

### FIRST CAUSE OF ACTION

**Willful and/or Knowing Violation of 47 U.S.C. § 227**
**Telephone Consumer Protection Act of 1991**
**(Against all Defendants)**

89. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

90. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

91. Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship with

Defendants.

92. Defendants' calls were made for purposes of advertising and marketing Defendants life insurance policies. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

93. The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

94. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

95. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

96. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

97. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

98. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

99. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

100. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

101. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

102. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

103. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

104. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

2. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

3. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

**WHEREFORE, Plaintiff prays for relief against defendant, as follows:**

**Prayer for Relief**

WHEREFORE, Plaintiff Mabel Arredondo prays for judgment against the Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial.

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law.

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for 4 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 4 calls.

E. An award to Ms. Arredondo of damages, as allowed by law under the TCPA;

F. An award to Ms. Arredondo of interest and costs, as allowed by law and equity

G. Such further relief as the Court deems necessary, just, and proper.

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

September 1, 2022

*(signature: Mabel Arredondo)*

Mabel Arredondo
*Plaintiff, Pro Se*
9328 Lait Drive
El Paso, Texas 79925
Phone: (915) 999-8219